**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: August 12, 2025

S25Y1130.  IN THE MATTER OF WILLIAM KEITH MCGOWAN.

PER CURIAM.

These disciplinary matters are before the Court on the Report and Recommendation of Special Master Jack J. Helms, Jr., who recommends the disbarment of William Keith McGowan (State Bar No. 492935), a member of the State Bar since 1992, for his conduct while representing a client in a personal injury matter. By virtue of McGowan's default, the Special Master concluded that he violated Rules 1.2(a), 1.3, 1.4(a), 1.15(I)(a), 1.15(I)(b), 1.15(I)(c), 1.15(I)(d), 1.15(II)(b), 8.4(a)(4), and 9.3 of the Georgia Rules of Professional Conduct ("GRPC" or "Rules") found in Bar Rule 4-102(d). The maximum sanction for a violation of Rules 1.4(a) and 9.3 is a public reprimand. The maximum sanction for a violation of Rules 1.2(a), 1.3, 1.15(I)(a), 1.15(I)(b), 1.15(I)(c), 1.15(I)(d), 1.15(II)(b), and

8.4(a)(4) is disbarment. Neither McGowan nor the State Bar requested review by the Review Board, and neither party has filed exceptions in this Court. Thus, this matter is now ripe for this Court's consideration. Having reviewed the record, we agree with the Special Master that disbarment is the appropriate sanction.

1. Procedural History

On April 21, 2023, the State Bar issued a Notice of Investigation to McGowan, informing him that a client had filed a grievance against him concerning his failure to disburse to the client any funds from a $30,000 settlement. On December 15, 2023, McGowan filed an untimely response, in which he claimed that he was working with the client's health insurer to resolve a lien that it had filed against the client. On February 29, 2024, following its investigation into the matter, the State Bar personally served McGowan with a Formal Complaint charging him with violations of

Rules 1.2(a),[1] 1.3,[2] 1.4(a),[3] 1.15(I)(a),[4] 1.15(I)(b),[5] 1.15(I)(c),[6] 1.15(I)(d),[7] 1.15(II)(b),[8] 8.4(a)(4),[9] and 9.3.[10] McGowan failed to file a

---

[1] Rule 1.2(a) provides, in pertinent part, that "a lawyer shall abide by a client's decisions concerning the scope and objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued."

[2] Rule 1.3 provides, in pertinent part, that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[3] Rule 1.4(a) provides, in pertinent part, that a lawyer shall "reasonably consult with the client about the means by which the client's objectives are to be accomplished," "keep the client reasonably informed about the status of the matter," and "promptly comply with reasonable requests for information."

[4] Rule 1.15(I)(a) provides, in pertinent part, that "[a] lawyer shall hold funds or other property of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyers own funds or other property," that "[f]unds shall be kept in one or more separate accounts maintained in an approved institution," and that "[c]omplete records of such account funds and other property shall be kept by the lawyer."

[5] Rule 1.15(I)(b) provides, in pertinent part, that "a lawyer may not disregard a third person's interest in funds or other property in the lawyer's possession."

[6] Rule 1.15(I)(c) provides, in pertinent part, that "[u]pon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person," "shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive," and, upon request, "shall promptly render a full accounting regarding such property."

[7] Rule 1.15(I)(d) provides that "[w]hen in the course of representation a lawyer is in possession of funds or other property in which both the lawyer and a client or a third person claim interest, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall

3

timely Answer to the Formal Complaint as required by Bar Rule 4-212(a). On March 20, 2024, the State Bar filed a Motion for Default, which the Special Master granted on July 22, 2024. The Special Master then held an aggravation and mitigation hearing, after which he submitted his Report and Recommendation.

2. The Special Master's Report and Recommendation

*Factual Findings*: Based on the factual allegations in the State Bar's complaint—which were deemed admitted by virtue of McGowan's default—the Special Master recounted that on October 1, 2019, the client was injured in a car accident, after which she suffered from post-concussion syndrome. She needed physical

---

promptly distribute all portions of the funds or property as to which the interests are not in dispute."

[8] Rule 1.15(II)(b) provides, in pertinent part, that "[n]o funds shall be withdrawn from [a lawyer's] trust account[] for the personal use of the lawyer maintaining the account except earned lawyer's fees debited against the account of a specific client and recorded as such."

[9] Rule 8.4(a)(4) provides that "[i]t shall be a violation of [the Rules] for a lawyer to . . . engage in professional conduct involving dishonesty, fraud, deceit, or misrepresentation."

[10] Rule 9.3 provides that "[d]uring the investigation of a matter pursuant to these Rules, the lawyer complained against shall respond to disciplinary authorities in accordance with State Bar Rules."

therapy and, after having difficulty getting coverage for her treatment, she hired McGowan because he had been friends with her husband since college. Around October 14, 2021, McGowan filed suit on behalf of the client and, in February 2022, the client authorized McGowan to settle the case for $30,000. On February 23, 2022, McGowan deposited the $30,000 settlement check into his IOLTA account.

During the following month, McGowan made three unexplained and unauthorized transfers of $2,500 of the client's funds from his IOLTA account to his operating account. In April 2022, McGowan provided the client with a document entitled "Statement of Receipts and Disbursements," which cited $30,000 in total recovery, with $22,237 due to the client as the net proceeds and $7,763 due to McGowan. Upon receiving the statement, the client asked McGowan about the status of her funds. McGowan told the client that he was working to settle the subrogation claim that her health insurer had asserted against her for her accident-related treatment. In reality, he had not been in touch with the insurer and

5

used the purported negotiation as an excuse for not paying the client her portion of the settlement funds. McGowan continued to transfer the client's settlement funds out of his IOLTA account and, by July 2022, McGowan had transferred $17,400 of the client's settlement funds out of his IOLTA account without the client's knowledge or permission.

On August 4, 2022, the health insurer notified the client that it had tried to contact McGowan but had not been successful in reaching him. On August 26, 2022, the client emailed McGowan, instructing him to mail a check to the health insurer as final settlement of the subrogation claim. McGowan neither responded to the email nor paid the health insurer as directed. On September 23, 2022, the client sent McGowan a certified letter demanding her share of the settlement funds. McGowan did not accept delivery of the letter, and the client filed a grievance with the State Bar.

*Rule Violations*: Pursuant to McGowan's default, the Special Master concluded that McGowan violated Rule 1.2(a) by failing to communicate with the client about her case as he transferred the

6

settlement proceeds to himself; by failing to abide by the client's instructions regarding the disbursement of her recovery; and by withholding funds from the client contrary to her explicit directions. McGowan violated Rule 1.3 by abandoning the client's case and by failing to disburse her funds as necessary to finalize her case. McGowan violated Rule 1.4(a) by failing to adequately communicate with the client; by failing to provide updates to the client; and by withholding information from the client about his taking of her funds. McGowan violated Rule 1.15(I)(a) by failing to keep the client's settlement funds separate from his own; by transferring her settlement funds out of his IOLTA account and into his operating account; and by failing to keep the funds in a separate account maintained in an approved institution. McGowan violated Rule 1.15(I)(b) by disregarding the interest the client's health insurer had in the settlement funds. McGowan violated Rule 1.15(I)(c) by failing to promptly notify the client of his receipt of the settlement; by failing to promptly deliver to the client her undisputed share of the settlement funds; and by failing to account for the settlement.

7

McGowan violated Rule 1.15(I)(d) by failing to keep his client's recovery separate until there was an accounting of interests and by failing to promptly distribute all portions of the funds that were not in dispute. McGowan violated Rule 1.15(II)(b) by failing to keep and maintain trust account records and by withdrawing funds from his trust account for his personal use. McGowan violated Rule 8.4(a)(4) by misleading the client and the State Disciplinary Board in his untimely response to the Notice of Investigation that the reason for his delay in delivering the funds was because he was negotiating with the health insurer, when he had already converted the funds for personal use. McGowan violated Rule 9.3 by failing to provide a timely answer under oath to the State Bar's Notice of Investigation.

*ABA Standards*: The Special Master then cited the framework set out in the *ABA Standards for Imposing Lawyer Sanctions* (1992) ("ABA Standards"), which provides that, when imposing a sanction, "a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or

8

mitigating factors." ABA Standard 3.0. See also *In the Matter of Morse*, 266 Ga. 652 (1996) (ABA Standards are instructive in determining the appropriate level of discipline). In considering the duty violated, the Special Master determined that McGowan had a duty of diligence, a duty to preserve the property of his client, and a duty to his client to communicate and perform the work for which he was hired, and that McGowan "failed in these duties." In considering McGowan's mental state, the Special Master determined that McGowan's actions were knowing and intentional. In considering the injury caused by McGowan's conduct, the Special Master determined that the client suffered significant financial harm due to McGowan's failure to disburse the funds to which the client was entitled—as she testified as the evidentiary hearing that she "drained [her] savings account" to pay her medical expenses— and that McGowan's actions undermined the public's trust in the legal profession.

Further, the Special Master determined that in aggravation, McGowan had a dishonest or selfish motive, as he converted client

funds for his own personal use; displayed a pattern of misconduct, as the client testified at the evidentiary hearing that he repeatedly misled her about the status of her settlement funds; submitted false statements and engaged in deceptive practices during the disciplinary process, as he claimed that he did not disburse the settlement funds because he was negotiating with the client's health insurer which was untrue because he had already withdrawn the client's funds for his own use; refused to acknowledge the wrongful nature of his conduct, as at no point during the evidentiary hearing did he acknowledge that his conduct was wrong; had substantial experience in the practice of law, as he was admitted to practice in 1992; showed an indifference in making restitution, as he had not paid the client any portion of her funds and did not express any intent to do so at the evidentiary hearing; and engaged in illegal conduct based on his conversion of the client's funds. See ABA Standard 9.22(b), (c), (f), (g), (h), (i), (j) and (k). The Special Master further determined that McGowan's lack of a prior disciplinary record was the only mitigating factor. See ABA Standard 9.32(a).

*Recommended Discipline*: The Special Master then concluded that based on the Rules violated, McGowan should be disbarred, noting that this Court has previously imposed disbarment for attorneys who engaged in similar conduct.

3. Analysis

Upon reviewing the record, we agree with the Special Master that disbarment is the appropriate sanction for McGowan's intentional violations of Rules 1.2(a), 1.3, 1.4(a), 1.15(I)(a), 1.15(I)(b), 1.15(I)(c), 1.15(I)(d), 1.15(II)(b), 8.4(a)(4), and 9.3, and that this sanction is consistent with prior cases disbarring lawyers for similar conduct. See *In the Matter of Raines*, 319 Ga. 820 (2024) (disbarring attorney—who was in default and had no prior discipline history— for violating Rules 1.15(I)(a), 1.15(I)(b), 1.15(I)(c) and 1.15(II)(b) by failing to disburse settlement funds owed to his clients and third parties and converting the settlement funds for personal use); *In the Matter of Fagan*, 314 Ga. 208 (2022) (disbarring attorney—who was in default—for violating Rules 1.15(I), 8.4(a)(4), and 9.3, among others, by converting his client's funds for personal use, misleading

11

his clients regarding the settlement funds, and failing to respond to disciplinary authorities); *In the Matter of Turner*, 311 Ga. 204 (2021) (disbarring attorney—who was in default and had no prior disciplinary history—for violating Rules 1.3, 1.4(a), 1.15(I)(c), 8.4(a)(4), and 9.3 by failing to disburse settlement funds to his client, failing to respond to the client's request for information, and failing to respond to disciplinary authorities); *In the Matter of Berry*, 310 Ga. 158 (2020) (disbarring attorney—who was in default—for violating Rules 1.15(I) and 1.15(II), among others, by failing to inform his client that he had settled the personal injury claim, failing to pay the client's medical provider, failing to maintain records related to the settlement funds received, and misappropriating the settlement funds); *In the Matter of Snipes*, 303 Ga. 800 (2018) (disbarring attorney—who was in default—for violating Rules 1.2, 1.3, 1.5, 1.15(I), 8.4(a)(4), and 9.3 by failing to pay the client's outstanding medical bills from the settlement funds as promised and converting the funds to his own personal use). See also *In the Matter of McDonald*, 319 Ga. 197, 214 (2024) (disbarring

attorney who "blatantly violated Rules 1.15 (I) and (II) in her handling of the money that was entrusted to her," noting that these violations "would support disbarment on its own").

Accordingly, it is ordered that the name of William Keith McGowan be removed from the rolls of persons authorized to practice law in the State of Georgia. McGowan is reminded of his duties pursuant to Bar Rule 4-219(b).

*Disbarred. All the Justices concur, except Ellington and Land, JJ., not participating.*